WEISS ET, PLAINTIFFS-APPELLANTS, *v.* KEARNS ET,
DEFENDANTS-APPELLEES.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 26375.   Decided June 13, 1963.

*Mr. Martin A. Rini,* and *Mr. Donald L. Goldman,* for plain-
tiffs-appellants.
*Mr. Edwin F. Woodle,* for defendant-appellee.

KOVACHY, J. This is a pending case on the docket of this court which was appealed on questions of law and fact from a judgment entered in the Court of Common Pleas of Cuyahoga County. Defendant-appellee, A. L. Kearns, hereafter designated appellee, has filed a motion to dismiss the appeal on questions of law and fact "for the reason that the court has no jurisdiction to entertain such an appeal." He cites as authority the recent decision of the Court of Appeals of the Fourth Appellate District, *Buckeye Union Casualty Co. v. Braden*, 116 Ohio App., 348, and an article which appeared in The Ohio Bar, Vol. XXXV, No. 39, at page 1150 (October 8, 1962), written by our esteemed colleague, Judge Lee E. Skeel.

The burden of Judge Skeel's article is that the language incorporated in the 1944 Amendment to Section 6, Article IV of the Ohio Constitution, wherein it is stated that "the courts of appeals shall have * * * such jurisdiction as may be provided by law to review, affirm, modify, set aside, or reverse judgments or final orders * * *" empowers the General Assembly to enact laws to provide the method and procedure to appeal cases to the courts of appeals on questions of law only since the use of the words "review, affirm, modify, set aside or reverse" historically, in the court system of Ohio, mean "error proceedings" (now known as appeals on questions of law) and the Supreme Court, following the 1912 Amendment to the same Section and Article, has declared that the expression "as may be provided by law" gives the General Assembly no power to enlarge the jurisdiction so indicated but merely to provide by law the method of exercising that jurisdiction, and since the 1944 Amendment leaves out the expression "appellate jurisdiction in the trial of chancery cases," which was part of the 1912 Amendment, appeals de novo on law and fact are eliminated.

Paragraph one of the syllabus of the *Buckeye Union Casualty Company case, supra,* reads as follows:

"Courts of Appeals do not have jurisdiction in appeals on questions of law and fact."

Judge Radcliff, the writer of the opinion in that case, also relies heavily upon articles written by Judge Skeel appearing in Skeel's Ohio Appellate Law, 1961 Cumulative Service, 88, et

seq., Section 200-1, and 12 Western Reserve Law Review, 645. Judge Radcliff, moreover, believes that the original reason and need for an appeal on law and fact no longer exists for the reason that when Section 6, Article IV of the Ohio Constitution was amended in 1883, creating the circuit courts to replace the district courts, all possibility of an appeal coram nobis (appeal to oneself) was abolished, and it became impossible for a judge to preside in an equity case "on the trial level and then sit as one of three judges reviewing the same case on appeal."

Plaintiffs-Appellants, hereafter designated appellants, argue that the 1944 Amendment of Section 6, Article IV of the Ohio Constitution, by providing that:

"The courts of appeals shall have * * * *such jurisdiction as may be provided by law to review, affirm, modify, set aside or reverse judgments or final orders* * *." (Emphasis added.) confers plenary power upon the General Assembly to change the appellate jurisdiction of the courts of appeals within the ambit "to review, affirm, modify, set aside, or reverse," that the language encompasses a "review" on questions of law and fact as well as on questions of law and, in accordance therewith, empowers the General Assembly to enact Sections 2501.02 and 2505.21, Revised Code, effective October 4, 1955, conferring jurisdiction upon the courts of appeals to "review" certain designated classes of cases on questions of law and fact.

Parts of Section 2501.02, Revised Code, pertinent to our discussion here, read as follows:

"* * * In addition to the original jurisdiction conferred by Section 6 of Article IV, Ohio Constitution, the court shall have jurisdiction:

"(A) Upon an appeal upon questions of law to review, affirm, modify, set aside, or reverse judgments or final orders of courts of record inferior to the court of appeals within the district, including the finding, order, or judgment of a juvenile court that a child is delinquent, neglected, or dependent, for prejudicial error committed by such lower court;

"(B) Upon an appeal on questions of law and fact the court of appeals in cases arising in courts of record inferior to the court of appeals within the district, shall weigh the evidence and render such judgment or decree as the trial court could

and should have rendered upon the original trial of the case, in the following classes of actions, seeking as a primary and paramount relief:

"1. The construction or enforcement of a trust, including the enforcement or establishment of constructive or resulting trusts.

"2. The establishment or enforcement of equitable estates arising from the conversion of property.

"3. The foreclosure of mortgages and marshalling of liens, including statutory liens.

"4. The appointment, removal and control of trustees and receivers.

"5. The restraint of commission of torts.

"6. The reformation and cancellation of instruments in writing.

"7. The restraint of actions or judgments at law.

"8. The quieting of title to property, the partition of property, and the registration of land titles.

"9. The specific performance of contracts, or the restraint of the breach thereof.

"10. Injunction, accounting, subrogation or interpleader.

"In all cases not falling within the classes designated above the court of appeals shall have jurisdiction to proceed as in an appeal on questions of law only.

"* * *."

Parts of Section 2505.21, Revised Code, captioned, "Hearing on appeal," read as follows:

"* * *."

"An appeal taken on questions of law and fact entitles the party to a hearing and determination of the facts de novo which shall be upon the same or amended pleadings. The court shall *review* the final order, judgment or decree upon such part of the record made in the trial court as any party may present to the court and such additional evidence as upon application in the interest of justice the court may authorize to be taken, such evidence to be presented in the manner and form prescribed by the court." (Emphasis added.)

It is conceded by appellee that the case here appealed comes within the purview of Section 2501.02, Revised Code, as a "law

and fact" appeal for the reason that the ultimate relief sought by appellants was the granting of an injunction permanently restraining appellee from attempting to satisfy a default judgment obtained by him against appellants in the Court of Common Pleas.

The sole question before us is whether these laws, vesting the courts of appeals with jurisdiction to "review" the classes of cases set forth in Section 2501.02, Revised Code, on questions of law and fact in accordance with the method and procedure outlined in Section 2505.21, Revised Code, are repugnant to the provisions of Section 6, Article IV of the Ohio Constitution, as amended in 1944, and, therefore, unconstitutional enactments of the General Assembly.

In considering the question whether these enactments of the General Assembly are constitutional, we must keep in mind that the constitution under which Ohio operates was adopted in 1851 and that Section 6, Article IV, an integral part of such organic law, has undergone four amendments, each aimed at improving the administration of justice in intermediary reviewing courts—in 1883, 1912, 1944 and 1959. (The 1959 Amendment merely authorizes the General Assembly to add additional judges.)

Much of the significant language used in the 1944 Amendment had been used before in the ninety-three year old constitution and in statutes enacted pursuant to its authority, and resort must be had to the history of the times when these words, phrases and expressions were first employed to understand the meaning and sense to be accorded them.

The following is stated in 11 American Jurisprudence, 676, Section 63:

"It is settled by very high authority, that in placing a construction on a Constitution or any clause or part thereof, a court should look to the history of the times and examine the state of things existing when the Constitution was framed and adopted, in order to ascertain the prior law, the mischief, and the remedy. A constitutional provision must be presumed to have been framed and adopted in the light and understanding of prior and existing laws and with reference to them."

Judge Stephenson of the Supreme Court of Ohio sets forth

486

the established rules of construction in determining the constitutionality of an act of the Legislature at page 282 in the case of *Board of Elections* v. *State, ex rel. Schneider,* 128 Ohio St., 273, as follows:

"1. It must be accorded the presumption of constitutionality.

"2. The question of constitutionality must be determined in the light of the Constitution in its entirety.

"3. If the Act can be fairly reconciled with the Constitution, we must so reconcile it.

"4. In considering the scope of the Act we must not only consider past and present evils, if any, but we must determine whether its existence would naturally tend to lead us into future evils. *Village of Euclid* v. *Camp Wise Assn.,* 102 Ohio St., 207, at page 215, 131 N. E., 349.

"5. If the maxim 'Expressio unius est exclusio alterius' is involved, we must consider it. *State, ex rel. Robertson Realty Co.,* v. *Guilbert, Aud. of State,* 75 Ohio St., 1, 78 N. E., 931.

"6. Courts have nothing to do with the policy, justice or wisdom of a statute, so long as it can be said that it does not contravene the Constitution. *Cincinnati Street Ry. Co.* v. *Horstman,* 72 Ohio St., 93, 73 N. E., 1075; *B. & O. Rd. Co.* v. *Chambers,* 73 Ohio St., 16, 76 N. E., 91, 11 L. R. A. (N. S.), 1012; *Nicholson* v. *Franklin Brewing Co.,* 82 Ohio St., 94, 91 N. E., 991, 137 Am. St. Rep., 764.

"7. It is dangerous for any court to hold that an act of the General Assembly contravenes the spirit, but not the letter, of the Constitution. The spirit of the Constitution is like any other spirit. We cannot see it, nor handle it, consequently we do not know much about it. We are too prone to insist that the spirit of the Constitution is what we think it ought to be. Unless such spirit is clearly manifest, it had best be left in the spirtual world. *Cass* v. *Dillon,* 2 Ohio St., 607; *State, ex rel. Evans,* v. *Dudley,* 1 Ohio St., 437; *Lehman* v. *McBride,* 15 Ohio St., 573; *State, ex rel. Garnes,* v. *McCann,* 21 Ohio St., 198.

"8. However, the General Assembly exercises delegated authority only, and any act passed by it not fairly falling within the scope of legislative authority is as clearly void as though expressly prohibited. *Cincinnati, Wilmington & Zanesville Rd.*

*Co.* v. *Commissioners of Clinton County,* 1 Ohio St., 77; *Baker* v. *City of Cincinnati,* 11 Ohio St., 534; *Lehman* v. *McBride, supra; State, ex rel. Garnes,* v. *McCann, supra; Bloom* v. *City of Xenia,* 32 Ohio St., 461.

"9. A constitution is to be construed by the same rules as those employed in the construction of statutes, except that since the terms of the constitution are more general the grants of power should be construed more liberally. *County of Miami* v. *City of Dayton,* 92 Ohio St., 215; 110 N. E., 726.

"10. History of the law may lend light to construction. Cooley's Constitutional Limitation (8 Ed.), Vol. 1, pages 132 and 133."

(All subsequent emphases in this opinion are supplied unless otherwise indicated.)

Before the Ohio Constitution of 1851, Ohio operated under a constitution adopted in 1802 wherein provision was made for three constitutional courts: justices of the peace, common pleas, supreme, and such other courts as the Legislature might from time to time establish (Section 1, Article III). The supreme court was the only court which entertained appeals from the court of common pleas and had original and appellate jurisdiction, both in common law and in chancery, *"in such cases as shall be directed by law."* (Section 2, Article III.) All cases appealed to it were retried de novo.

An intermediary court of review between the supreme court and the court of common pleas was first established in the Ohio Constitution of 1851, Section 5, Article IV, which provided for district courts composed of the judges of the court of common pleas of the respective district and one of the judges of the supreme court. Its jurisdiction was prescribed in Section 6 and it had *"like original jurisdiction with the supreme court, and such appellate jurisdiction as may be provided by law."* The Legislature on March 23, 1852, passed "an act regulating appeals to the district court." 3 Curwen, Statutes of Ohio, Chapter 1124 (page 1725), 50 Ohio Laws, 93, Sec. 1, March 23, 1852. Parts of Section 1 of such Act read:

"* * * appeals may be taken from all final judgments in civil cases at law, decrees in chancery, and interlocutory decrees dissolving injunctions rendered by the Court of Common Pleas,

the Superior and Commercial Courts of Cincinnati, and the Superior Court of Cleveland, which said courts have original jurisdiction, * * *; *and the cause so appealed shall be again tried, heard and decided, in the District Court, in the same manner as though the said District Court had original jurisdiction of the cause.*"

In 1880 provision was made for appeals on questions of law as we know them in present day practice. Under Ohio Revised Statutes in force January 1, 1880, Title IV, "Error, Mandamus and Quo Warranto," in Chapter 1, "Jurisdiction and Procedure in error," Section 6707 reads:

"An order affecting a substantial right in an action * * * is a final order which may be *vacated, modified,* or *reversed,* as provided in this title."

Section 6708 reads:

"A judgment rendered by * * * or any other tribunal * * * inferior to Common Pleas Court may be *reversed, vacated* or *modified* by the Common Pleas Court."

Section 6709 reads:

"A judgment rendered or final order made by the Court of Common Pleas or any Superior Court may be *reversed, vacated* or *modified* by the district court, for errors appearing on the record."

Trials de novo to the district court were provided for in Section 5 as appears in 55 Laws of Ohio, 82, as follows:
"* * *

"That appeals may be taken from all final judgments, orders or decrees in civil actions in which the parties have not the right * * * to demand a jury * * * and action so appealed shall be again tried, heard and decided in the district court in the same manner as though the said district court had original jurisdiction of the action."

A court similar to our present court of appeals was created by an amendment to Article IV, Section 6 of the Ohio Constitution on October 9, 1883. It was known as the circuit court and was established as the successor to the district court and given like original jurisdiction with the supreme court and *"such appellate jurisdiction as may be provided by law."*

On September 7, 1885, the Legislature passed Section 6709 which provided that:

"A judgment rendered, or final order made by the court of common pleas * * * may be *reversed, vacated,* or *modified* by the district court, for errors appearing on the record."

and Section 6710 passed at the same time read as follows:

"A judgment rendered, or final order made by any court, * * *, may be *reversed, vacated,* or *modified* by the supreme court for errors appearing on the record; * * *."

It will be observed that in each instance where the General Assembly invested reviewing courts with jurisdiction to hear cases "in error proceedings," now known as appeals on questions of law, it spoke of judgments or final orders being *reversed, vacated,* or *modified,* and wherever these words are used, they refer to an appeal on questions of law.

Section 6, Article IV of the Ohio Constitution, as amended in 1912, reads, in part, as follows:

"The courts of appeals shall have * * * appellate jurisdiction in the trial of chancery cases, and, to review, *affirm, modify,* or *reverse* the judgments of the courts of common pleas, superior courts and other courts of record within the district as may be provided by law. * * *"

This was the first instance in the juridical course of the Constitution wherein the General Assembly was not authorized to determine the appellate jurisdiction of the intermediate reviewing courts.

The amendment was proposed by a Constitutional Convention which sat from January 9 through June 7 of the year 1912. Two volumes, designated "Proceedings and Debates Ohio Constitutional Convention 1912" contain a verbatim record of the convention. It is interesting reading and sheds much light on the language used in Section 6, Article IV, as amended in 1912.

It appears that the reviewing courts of the state in those days were congested and years behind in their dockets. This condition existed in the circuit courts because of the many cases which had to be retried, making litigation drawn out and cumbersome. (All cases in which a party did not have a right to a jury trial were again tried in the circuit court as though it had original jurisdiction.) The slogan of the Convention was "One Trial and One Review" and reforms to the judicial system centered around that concept. The great debates dealt with the

elimination of a second trial in the circuit courts which again required the appearance of witnesses at a full hearing. It was argued by many of the delegates that the trial in common pleas court in the class of cases permitting retrials was a sham, because lawyers would not put on their full case, realizing that a retrial of the cause could be had in the circuit court. This, they argued, made the trial of causes of fencing contest—the first trial merely serving the purpose of disclosing what evidence an adversary had. It was pointed out that Ohio was almost alone in providing for a complete retrial in a reviewing court of chancery cases and that most other states and the federal procedure provided for the reviewing court to determine the matter anew on a transcript of the evidence presented in the trial court.

The Committee on Judiciary and Bill of Rights presented a unanimous report proposing the following amendment to Section 6, Article IV of the Constitution:

"The courts of appeal shall have * * * original jurisdiction in quo warranto, mandamus, habeas corpus and procedendo and appellate jurisdiction to *review*, and affirm, modify, or reverse the judgments of the courts of common pleas and superior courts of the district, in all cases, and judgments of said courts of appeal shall be final in all * * * cases, except such as involve questions arising under the constitution of this state, or the United States, or cases of the infliction of the penalty of death, or of imprisonment for life, or cases of which it has original jurisdiction."

The chairman of this committee made it clear to the delegates that the committee intended that the word "review" have a broad meaning and include the concept of the court of appeals reviewing a chancery case tried before a judge in the common pleas court on the transcript of the evidence *on law as well as on fact*, and stated that "It was intended that the word 'review' should be broad enough to include trial on facts on merely a review of the record." The debates which followed for days make it manifest that every delegate to the convention understood that such was the meaning intended by the use of the word "review." After debate, the proposal was adopted and the convention at the time was convinced that such amend-

ment would achieve the judicial reform most wanted. The convention thereafter was recessed for several days which gave the delegates an opportunity to discuss this proposed amendment with the people of their various districts. Upon reconvening, the delegates who returned from the rural parts of the state reported that the folks back home were dissatisfied.

A motion was made to amend by adding the sentence "and for the retrial of equity cases appealed in any of said courts." The argument was that circuit courts offered such retrials and that the people wanted such procedure to continue in the new court of appeals; that the one judge who tried and decided equity cases without a jury usually knew the parties involved and was so close to the controversy that he was bound to have some bias in the matter; that the people wanted those cases retried before three judges of the court of appeals who would be removed from such influences; that the transcript of the evidence was too costly for poor litigants and that the summoning of witnesses for retrial was much cheaper; and that they had more confidence in a trial in which the judges could see the witnesses face to face to determine their credibility rather than to have to make such determination from a cold transcript. The delegates from the urban areas argued, however, that the circuit courts in their district, by rule of court, required that the trial of "cases appealed" be heard on the transcript of the testimony rather than on the basis of a rehearing of the witnesses; that the results were just as satisfactory as a retrial; and that a retrial of the case made for two trials and no review, which was exactly what the convention was trying to prevent. The proponents of the motion then argued that a retrial in the reviewing court was nothing more than a form of a "review" of the trial had in the court of common pleas, that, in reality, the litigant was given a "review" by way of an actual trial instead of a "review" by way of a printed record, and that such proceeding might be called a trial rather than a retrial. This argument carried the day and the amendment, previously adopted, was amended to incorporate the following wording: "in the trial of chancery cases and" after the word "jurisdiction." The proposed amendment now read:

"The courts of appeals shall have original jurisdiction in

quo warranto, mandamus, habeas corpus, prohibition and procedendo and appellate jurisdiction in the trial of chancery cases, and, to review, affirm, modify or reverse the judgments of the courts of common pleas, superior courts and other courts of record within the district as may be provided by law * * *."

The amendment, as finally drafted, retained the trial de novo in chancery cases and, under the well known maxim "expressio unius est exclusio alterius" preempted such retrial for other cases. The word "review" thus became of little significance because the use of the words "*affirm, modify* or *reverse*" plainly gave the court of appeals jurisdiction to hear cases other than chancery cases "in error proceedings."

The Supreme Court, in the case of *Cincinnati Polyclinic* v. *Balch*, 92 Ohio St., 415, 111 N. E., 159, in interpreting the language "review, affirm, modify or reverse" gave no special consideration to the word "review." And the Supreme Court in interpreting the expression "in the trial of chancery cases" in the case of *Wagner* v. *Armstrong*, 93 Ohio St., 443, 113 N. E., 397, stated the following in paragraph one of the syllabus:

"1. Section 12224, General Code, purporting to vest the courts of appeals with jurisdiction in the trial of cases on appeal, is unconstitutional and void. The jurisdiction of the courts of appeals in the trial of cases on appeal is expressly limited by the constitution to chancery cases, and this jurisdiction cannot be enlarged by the general asembly."

Also see, memoranda case of *Snyder* v. *Deeds*, found at 91 Ohio St., 407, 110 N. E., 1068.

We come now to the consideration of Section 6, Article IV of the Ohio Constitution as amended in 1944. It reads as follows:

"The courts of appeals shall have original jurisdiction in quo warranto, mandamus, habeas corpus, prohibition and procedendo, and such jurisdiction as may be provided by law to review, affirm, modify, set aside or reverse judgments or final orders of boards, commissions, officers, or tribunals and of courts of record inferior to the court of appeals within the district, * * *. All laws now in force not inconsistent herewith shall continue in force until amended or repealed; * * *."

In 10 Ohio Jurisprudence (2d), 134, Constitutional Law,

Section 33, under the heading, "Intent of Framers and Adopters as Controlling," states the following:

"The *polestar* in the construction of constitutions as well as other written instruments is the intention of the makers and adopters. The very object of construction, and its only proper purpose, is the determination and effectuation of such intent. The real intention of the body forming the law and the people adopting it must be ascertained and given effect unless this is impossible."

See, *Cass* v. *Dillon,* 2 Ohio St., 607; *State, ex rel. Evans,* v. *Dudley,* 1 Ohio St., 437.

In Section 37 of the same volume we find this statement:

"* * * The fundamental law of the state is to be construed in no narrow and illiberal spirit. * * * Since a constitution deals in general terms, it should receive a broader and more liberal construction than statutes in order that its purposes may be achieved. * * *"

In Section 43 it is stated:

"The history of a constitutional provision, including the history of its subject matter, may lend light to construction."

"Particularly in regard to amendments to a constitution, the courts are under a duty to consider the old law, the mischief, and the remedy."

And in Section 44, "Debates and Proceedings of Convention," parts relevant here read:

"It is a well established rule that in construing the Constitution recourse may at times be had to proceedings in the convention which drafted that instrument * * *.

"Their consideration is proper in determining the purpose, intent and consequent meaning of doubtful provisions in which case they may be given great weight. Debates of the convention certainly may legitimately aid in removing doubts and fortify the court in following the natural import of the language of the constitution. They may show the mischief intended to be prevented under the new order of things by the adoption of an amendment to the fundamental law."

See, *State, ex rel. Harbage* v. *Ferguson,* 68 Ohio App., 189, 36 N. E. (2d), 500, dismissed by Supreme Court, 138 Ohio St., 617, 37 N. E. (2d), 544; *State, ex rel. Arey* v. *Sherrill,* 142 Ohio St., 574, 53 N. E. (2d), 501.

The 1944 Amendment to the Ohio Constitution was sponsored by the Judicial Council of Ohio, which is a body created by statute and organized for the "continuous study of the organization, rules and method of procedure and practice of the judicial system of the State of Ohio, the work accomplished, and the results produced by that system and its various parts." In its report to the General Assembly, as required by law, it recommended, among other things, the following:

"1. The Council recommends the amendment of Section 6, Article IV, of the Constitution to return to the General Assembly the power it originally had to provide by law for the appellate jurisdiction of the courts of appeals throughout the state."

One of the conditions complained of, at the time the 1944 Amendment was placed before the people for a vote, was the lack of uniformity in proceedings with respect to law and fact appeals. In most of the appellate districts appeals on law and fact were heard and decided on a transcript of the testimony presented in the court below with such additional testimony as was desired by either party which by order of the court was obtained through a master commissioner and transcribed for the use of the court in establishing the facts anew. In other appellate districts, usually in rural areas, a trial was had with witnesses appearing in court. Under both systems the conditions complained of during the debates of the Constitutional Convention of 1912 again obtained. Lawyers merely participated in a sham trial, knowing full well that the real trial of the cause would take place in the court of appeals. Moreover, it was believed that the General Assembly was in a better position to correct abuses of the judicial system than having to resort to a constitutional amendment to bring about desired changes.

The people of Ohio were fully informed before voting on this amendment. The sponsors, the Judicial Council, with the aid of the State Bar Association, judges, lawyers and laymen, gave speeches and issued statements and a pamphlet, prepared by the Judicial Council, was widely distributed throughout the state.

The reasons for the amendment were many: the elimina-

tion of the compulsory review of chancery cases by a retrial in the court of appeals; the return of power to the General Assembly to establish all appellate jurisdiction so that changes that the people desired could be made more readily; the establishment of a uniform procedure throughout the state in cases appealed on law and fact; the insuring of full and complete trials of chancery cases in the trial court; the simplification of litigation by providing for one trial and one review; the reduction of disputes over the question of what is a chancery case.

See, 17 Ohio State Bar Association Report, 169; 16 Ohio State Bar Association Report, 32; 16 Cleveland Bar Association Journal, 219; Pamphlet of Judicial Council (as quoted on page 7 of appellee's brief, filed in Supreme Court, Case No. 30,706, *Youngstown Municipal Ry. Co.* v. *City of Youngstown*, 147 Ohio St., 221); 31 Ohio Opinions, 358; 31 Ohio Opinions, 561; 14 Ohio Opinions (2d), 352.

The amendment states that the courts of appeals shall have "* * * such jurisdiction as may be provided by law to review, affirm, modify, set aside or reverse judgments or final orders * * *." Appellee contends that this language merely empowers the General Assembly to provide for the method and procedure for appealing cases on questions of law alone because the words, "review, affirm, modify, and reverse," were used in the 1912 Amendment and interpreted to mean appeals on questions of law.

It is our view that the 1912 Amendment bears no analogy to the 1944 Amendment. The 1912 Amendment conferred the appellate jurisdiction on the courts of appeals and the General Assembly had no power to enlarge on it and was relegated to the role of merely providing the method and procedure, and law and fact appeals were confined to "trials in chancery cases," constraining the conclusion that the words "review, affirm, modify and reverse" meant appeals on questions of law and nothing else. The 1944 Amendment empowers the General Assembly to establish "such jurisdiction as may be provided by law" within the ambit "to review, affirm, modify, set aside and reverse" and thus returns the authority to determine the appellate jurisdiction of the intermediate reviewing courts to the

General Assembly where it was for sixty-one years prior to 1912.

The words *"review, affirm, modify* and *reverse"* are here not only brought under different auspices but assume a meaning attached to them prior to the 1912 Amendment when they were inaugurated in Ohio constitutional history during the Constitutional Convention of 1912.

The Convention first adopted an amendment to Section 6, Article IV of the Ohio Constitution which read:

"The courts of appeals shall have * * * appellate jurisdiction to review, and affirm, modify, or reverse judgments * * *."

The purpose was to carry out a basic purpose of the Convention: creation of a judicial system providing for one trial and one review. The word "review" in this amendment took on a broad and generic meaning and the amendment embraced the concept of reviewing chancery cases on questions of fact as well as law on a transcript of the evidence presented to the lower court.

It is reasonable to believe from all the circumstances bringing about the 1944 Amendment that such interpretation of the word "review" was contemplated by the sponsors and fully understood by the General Assembly which passed the resolution placing the amendment upon the ballot and by the people of Ohio who voted on it.

If appellee's contention that this language grants the Legislature the authority to provide the method and procedure for appeals on questions of law and no more, the framers were awkward indeed. All that needed to be stated with such purpose in mind would have been:

"Jurisdiction to reverse, modify or set aside judgments or final orders as may be provided by law."

Surely appellee gives no meaning to the language "such jurisdiction as may be provided by law" and the word "review." The expression, "as may be provided by law," before 1912, always meant the power of the General Assembly to determine the jurisdiction of the courts by the enactment of suitable laws. "Such jurisdiction," as used in the 1944 Amendment, plainly means the kind or nature of the jurisdiction which the General Assembly sees fit to provide. "Review" means "a

second or repeated view; judicial reexamination'' (Webster's New International Dictionary, Second Edition). By giving this language the liberal interpretation permitted and in the light of Ohio constitutional history, the determination that the General Assembly was empowered to provide for a ''reexamination'' of a case appealed on facts as well as on law seems manifest to us.

It is stated in *Williams* v. *United States*, 289 U. S., 553, 77 L. Ed., 1372, that ''* * * in expounding the Constitution every word must have its due force and appropriate meaning * * *.'' We therefore find no difficulty in determining that the General Assembly was fully authorized by the 1944 Amendment to pass legislation to invest the courts of appeals with the jurisdiction to entertain appeals on questions of law and fact and to provide the method and procedure necessary.

The Supreme Court of Ohio must have come to the same conclusion when it decided the case of *The Youngstown Municipal Ry. Co.* v. *City of Youngstown et al.*, 147 Ohio St., 221, 70 N. E. (2d), 649 (1946). The 1944 Amendment says that, ''All laws now in force, *not inconsistent herewith*, shall continue in force until amended or repealed.'' The Supreme Court held that the word ''laws'' as used in this sentence included the Constitution and that, ''Unless and until there is * * * legislative action, the appellate jurisdiction of the Courts of Appeals remains as it was at the time the amendment was adopted.''

Now, if the 1944 Amendment did not empower the General Assembly to pass legislation to give the courts of appeals jurisdiction to hear cases appealed to them on questions of law and fact, it would necessarily follow that the 1912 Amendment, which did provide such jurisdiction in chancery cases, would be inconsistent with the 1944 Amendment in such respects, and for this reason appeals on law and fact to the courts of appeals would no longer exist. That the Supreme Court felt that the General Assembly under the 1944 Amendment was empowered to enact legislation to provide for law and fact appeals is apparent from its decision. Also see, *Schottenstein* v. *Newburger*, 148 Ohio St., 71, 72 N. E. (2d), 903.

The statutes enacted by the General Assembly strike at the very heart of the unsatisfactory conditions that prevailed in law

and fact appeals by providing that the cause in the court of appeals be tried on the record made in the trial court and that only such additional evidence as may be authorized by the court of appeals in the interest of justice may be produced in that court. These sections make a trial with witnesses testifying on the appeal impossible and require that the parties in an appeal on questions of law and fact have a full and complete trial in the original forum intended for such proceedings. Moreover, they provide for a "review" with power to "weigh the evidence and render such judgment or decree as the trial court could and should have rendered upon the original trial of the case * * *" which, in contemplation of law, is the equivalent of a trial de novo and brings to fruition the concept of one trial and one review.

We hold, therefore, that Sections 2501.02 and 2505.21, Revised Code, are constitutional enactments of the General Assembly passed by it under powers granted it by Section 6, Article IV of the Constitution of Ohio, and that, as a consequence, courts of appeals have the jurisdiction to hear the case herein appealed on questions of law and fact.

The motion to dismiss the appeal on law and fact is accordingly overruled. Exceptions.

HURD, J., concurs.
SKEEL, C. J., dissents.

SKEEL, C. J., (dissenting). This appeal was filed in this court on questions of law and fact. Thereafter, upon motion, in the alleged exercise of its equity jurisdiction in a law and fact appeal, the court granted a request for a temporary restraining order restraining the defendant-appellees from attempting to secure satisfaction of a judgment previously entered by the Court of Common Pleas in their favor, the validity of which judgment is the subject of the action here appealed. The petition, as filed in the trial court, seeks to permanently enjoin these defendant-appellees from seeking to satisfy by execution or otherwise the judgment entered in their favor in a prior case. It is claimed that such judgment was taken without the knowledge of the plaintiff and in violation of an agreement of

settlement of the claim, it being the claim of this plaintiff-appellant that the defendants had agreed to dismiss such prior action as one of the terms of the settlement agreement.

There are now before this court two motions, one to vacate the temporary restraining order as granted by this court, and the other, to dismiss the appeal on law and fact and retain it on questions of law, both motions being founded on the claim that this court is without jurisdiction to retry the facts in a chancery case because of the amendment to Section 6, Article IV of the Constitution of Ohio, effective January 1, 1945. It is the conclusion of the writer of this dissenting opinion that such amendment withdrew such jurisdiction from the Court of Appeals of Ohio by striking out in said section the language: "in the trial of chancery cases" and relocating the words "as may be provided by law" from the end of the clause granting appellate jurisdiction, to the beginning of said clause following the words "such jurisdiction."

So that the significance of the change resulting from the amendment of 1944 may be made apparent, it will be helpful to set out the wording of the 1912 amendment and the change made by the amendment of 1944. That part of Section 6, Article IV, as adopted in 1912, is as follows, after granting original jurisdiction in the trial of the prerogative writs:

"* * * and appellate jurisdiction in the trial of chancery cases, and, to review, affirm, modify, or reverse the judgments of the court of common pleas, superior courts and other courts of record within the district as may be provided by law, * * *."

The part of Section 6, Article IV, just quoted, was, by the 1944 amendment, changed to read:

"* * *, and such jurisdiction as may be provided by law to review, affirm, modify, set aside, or reverse judgments or final orders of boards, commissions, officers, or tribunals, and of courts of record inferior to the court of appeals within the district, * * *."

Two pertinent changes dealing with the appeal of judicial decisions are immediately apparent. The phrase "and appellate jurisdiction in the trial of chancery cases" has been deleted and the phrase "as may be provided by law" moved from the end of the jurisdictional grant to the beginning of such grant

following the words "and such jurisdiction" as above quoted. The power to entertain appeals from final orders of administrative agencies or officers was also added if and when such appeals are provided for by law. The word "review" as retained in the 1944 constitutional amendment, as above quoted, must have been continued in the Constitution as having the same meaning as it was clearly intended to express in the constitutional amendment of 1912, as above quoted. There, the constitutional grant of jurisdiction to retry issues of fact on appeal was based on the phrase "and appellate jurisdiction in the trial of chancery cases." The substance of the phrase that follows deals with the right of the court of appeals to hear proceedings in error, now known as appeals on questions of law. The phrase is "* * *, and, to review, affirm, modify, set aside or reverse judgments * * *." This was the first time (1912) the word "review" was used in the jurisdictional sections of the courts in the Ohio Constitution. Also, in Section 2, Article IV, of the Constitution of 1912, dealing with the jurisdiction of the Supreme Court, it was provided:

"In cases of public or great general interest the Supreme Court may, within such limitation of time as may be prescribed by law, direct any court of appeals to certify its record to the Supreme Court and may *review* and affirm, modify, or reverse the judgment of the court of appeals." (Emphasis added.)

This phrase was continued in the Amendment to Article IV of the Constitution of 1944. Here it is clear that upon "review" meaning at that time an error proceeding, the supreme court has jurisdiction to affirm, modify or reverse a judgment of the court of appeals so that the use of the word "review" in both Section 2 and Section 6 of Article IV was intended to designate what is now an appeal on questions of law and could, under no circumstances, be interpreted or understood to include a retrial of the facts.

In 1936, the procedural sections of the General Code, dealing with appeals and proceedings in error, were amended. Prior to the amendments, appeals (meaning a retrial of the facts) were provided for under Title V "Procedure in Court of Appeals on Appeal" Chapter 1. Sections 12223 and 12224, General Code, provided:

(Section 12223, General Code.) "The court of appeals

shall have jurisdiction of certain cases, as hereinafter provided, by appeal; and the trial therein shall be conducted in the same manner as in the common pleas court, and upon the same pleading, unless amendments are permitted or ordered by the court of appeals."

(Section 12224, General Code.) "In addition to the cases and matters especially provided for, an appeal may be taken to the court of appeals by a party or other person directly affected, from a judgment or final order in a civil action rendered by the common pleas court, and of which it had original jurisdiction, if the right to demand a jury therein did not exist, and from an interlocutory order made by the common pleas court, or a judge thereof, dissolving an injunction, in a case in which it had original jurisdiction."

That part of this section conferring jurisdiction to appeal judgments of the Court of Common Pleas in cases where the right to trial by jury did not exist and where the order appealed was not a final order was held unconstitutional in the case of *Wagner* v. *Armstrong,* 93 Ohio St., 443, 113 N. E., 397, where, in the first paragraph of the syllabus, the court said:

"Section 12224, General Code, purporting to vest the courts of appeals with jurisdiction in the trial of cases on appeal, is unconstitutional and void. The jurisdiction of the courts of appeals in the trial of cases on appeal is expressly limited by the constitution to chancery cases, and this jurisdiction cannot be enlarged by the general assembly."

If the Supreme Court had considered that the words following the phrase "and appellate jurisdiction in the trial of chancery cases" which phrase is "and to review, affirm, modify or reverse * * *" included the retrial of the facts in cases other than chancery cases, the result of this decision would have been completely different. The court said on page 446 of the opinion:

"Here is a plain attempt to enlarge the jurisdiction on appeal of the courts of appeals. This is a power that the general assembly does not possess. It was decided by this court in *The Cincinnati Polyclinic* v. *Balch,* 92 Ohio St., 415, that the jurisdiction of the courts of appeals was unalterably fixed by Section 6 of Article IV of the new Constitution (1912) and the legislature consequently could neither enlarge nor diminish it.

Section 12224, General Code, attempts to enlarge the jurisdiction of the courts of appeals in appeal cases when it says that all cases may be appealed wherein the right of trial by jury did not exist, it contravenes the jurisdiction fixed by the constitution wherein it limits the jurisdiction by way of appeal to chancery cases. The test of the right to trial by jury is no longer the determinative one.''

The court on page 447 also gives support to the court's conclusion in the *Cincinnati Polyclinic case, supra,* that the words ''as may be provided by law'' did not place the jurisdiction of the courts of appeals within the control of the legislature. On page 417 of the *Cincinnati Polyclinic case,* the court said:

''* * * The legislature under this amended section has authority to provide the method for perfecting an appeal and the procedure in error cases, but it has no power to enlarge or limit the appellate jurisdiction of the court of appeals. * * *''

But even if it should be concluded that by simply changing the place of the words ''as provided by law'' in the jurisdictional grant of the Constitution, defining the jurisdiction of the court of appeals, from the end of the clause to a place near the beginning, that it was the purpose of the constitutional amendment to return to the legislature (as was true prior to 1912) the right to fix and control the jurisdiction of the court of appeals, then such right would be circumscribed by the phrase ''to review, affirm, modify, set aside or reverse judgments or final orders'' thus limiting the power of the legislature to provide for appeals on questions of law.

In the chapter on ''Appeals'' Sections 12223 to 12240, General Code, providing for appeals prior to 1936, the word ''review'' does not appear.

Proceedings in error in the court of appeals were then provided for in Chapter 2 of Title VI of the General Code, Sections 12247 to 12249, inclusive, General Code. Such a proceeding was accomplished by filing a petition in error in the reviewing court. Again the word ''review'' does not appear in the chapter.

As has been indicated, effective January 1, 1936, the chapters on Appellate Procedure were amended under Title V, Sections

12223-1 through 12223-47, General Code (now Sections 2505.01 to 2505.45, inclusive, Revised Code). Under the definition section of the new act, Section 12223-1, General Code (now Section 2505.01, Revised Code), the legislature clearly set out the meaning of the terms used in the act. It was provided: (The following is as appears in the Revised Code. There is, however, no change in substance.)

"As used in the Revised Code:

"(A) Appeal means all proceedings whereby one court *reviews* or *retries* a cause determined by another court, an administrative officer, tribunal or commission.

"(B) 'An appeal on questions of law' means a *review* of a cause upon questions of law including the weight and sufficiency of the evidence.

"(C) 'Appeal on questions of law and fact' means a *rehearing and retrial* of a cause upon the law and the facts and is the same as an 'appeal on questions of fact.'" (Emphasis added.)

Section 2501.02 (A), Revised Code, before and after amendment, clearly supports the use of the word "review" as authorizing only an appeal on questions of law.

Webster's Seventh New Collegiate Dictionary defines the word "review" as used in judicial proceedings: "to re-examine judicially * * * or renewed study of material previously studied" which clearly supports the meaning ascribed to the word "review" in the Constitution of Ohio as amended in 1912 and 1944 and Section 2505.01, Revised Code, just quoted.

To repeat for the purpose of emphasis, the term "review" as thus defined and used in Section 2505.01, Revised Code (Sec. 12223-1, General Code, of the Appellate Procedure Act, which was adopted in 1935, effective January 1, 1936), was intended to designate an appeal on questions of law and not a proceeding in the nature of a retrial of the issues joined without concern for the incidents occurring or the judgment or decree entered at the trial by the original trial court.

The historical background of the use of the word "review" in defining the jurisdiction of the court of appeals clearly shows the sense in which the members of the constitutional convention intended to ascribe to it, that is that it meant a review of the trial record in what was known in 1912 as an error proceed-

ing. Professor W. K. Gardner, in an address before the Ohio State Bar Association, November 29, 1945 (31 Ohio Opinions, 561) in considering this question, said, in part, that the word "review" was used to define an error proceeding. The only published view to the contrary is that of Honorable Simon Ross, formerly a Judge of the Court of Appeals of the First Judicial District, in an article published in 31 Ohio Opinions, 358, at page 360. No authority is cited for his conclusion that the word "review" could be used to indicate an appeal as used in the Constitution of 1912. The word, as indicated, was used for the first time in the constitutional amendment of 1912.

The construction of the jurisdictional phrase in the Constitution of 1912 clearly requires the conclusion, as stated by Professor Gardner, as herein quoted. The phrase, as quoted above "and appellate jurisdiction in the trial of chancery cases, *and* to review, affirm * * *" clearly provides for two proceedings, one the retrial of chancery cases and the other, separated by the conjunction "and" the power to review in an error proceeding judgments of courts of record. (Emphasis added.)

The cases also support this meaning of the word "review." See *Piascik* v. *Industrial Comm.*, 109 Ohio St., 570, 143 N. E., 533 (1924), where, in the first paragraph of the syllabus, it is provided, in part:

"* * * and the cause proceeds to verdict and judgment in that court, such judgment is subject to *review* upon error proceedings in the Court of Appeals * * *." (Emphasis added.)

Historically, the distinction between a "review" and a "retrial" in an appellate court is unmistakably clear as those terms were used at the beginning of our court system and until the creation of the circuit court of appeals in 1883. Error proceedings, as such, were not provided for, except when the supreme court convened in Columbus to consider questions of law reserved for the consideration of the full bench after concluding their respective duties while on circuit. After the creation of the district court in 1851, retrials could be had as set out in 3 Curwen, Statutes of Ohio, Chapter 1124 (page 1725) 50 Ohio Laws, 93, Sec. 1, March 23, 1852, where it was provided:

"Appeals may be taken from all final judgments in civil cases at law, decrees in chancery and interlocutory decrees dis-

solving injunctions rendered by the Court of Common Pleas, the Superior and Commercial Courts of Cincinnati, and the Superior Court of Cleveland, in which said courts have original jurisdiction, by any party against whom such judgment or decree shall be rendered, or who may be affected thereby, to the District Court; and the cause so appealed shall be again tried, heard and decided in the District Court, in the same manner as though said District Court had original jurisdiction of the cause.''

The constitutional amendment of 1883 created the circuit court of appeals. Its jurisdiction was provided for as to appeals by Section 5226, Revised Statutes. This section provided the right of appeal to the circuit court of appeals, meaning a retrial of the issues of fact in all civil cases in which ''* * * the right to trial by jury did not exist * * *.'' Proceedings in error to the circuit court of appeals were provided by Section 6709, Revised Statutes. The proceedings as thus indicated had no relationship one with the other. The word ''review'' does not appear within the Constitution as amended in 1883 or the statutes cited dealing with appeals or error proceedings.

An examination of the minutes of the constitutional convention of 1912, in considering the jurisdiction of the court of appeals, was reviewed by Professor Gardner, as published in 31 Ohio Opinions, 561, supra, in which he said:

''In 1912, delegates to the constitutional convention met and their stated purpose was to eliminate lengthy and expensive legal procedure. Accordingly, the original draft of Section 6, Article IV, did not, within the contemplation of the delegates, provide for any trial de novo or retrial on appeal. It read:

'' 'The courts of appeals shall have * * * appellate jurisdiction to review, affirm, modify or reverse the judgments of the courts of common pleas,' etc.

''There was no provision for retrial on appeal. At first this appeared to have been accepted.

''Some time later some of the delegates became fearful that they were taking away valuable rights from the people—or the lawyers—and an amendment was proposed to the effect that in all actions where the right of trial by jury did not exist there should be a trial de novo on appeal.

''After much debate the proposed amendment was tabled.

"It was later said by the Supreme Court that there were many lawyers of recognized ability who were members of that body. If you will read some of the debates at this convention you might suspect that the recognition was not wholly unwarranted—in some instances.

"Some three or four weeks later the subject was again brought up and another amendment was proposed in the following terms:

"After the words 'appellate jurisdiction' insert the words 'in the trial of chancery cases, and,'—so that the provision then read:

" 'The courts of appeals shall have * * * appellate jurisdiction in the trial of chancery cases, and to review, affirm, modify or reverse the judgments of the courts of common pleas.' etc.

"The delegates to this convention did not consider that the term 'review, affirm, modify or reverse judgments' authorized a trial do novo on appeal.

"After much debate for and against, the proposed amendment was adopted and written into the Constitution as it existed up until the 1944 amendment.

"Thus, two types of jurisdiction on appeal were provided for. First, the trial of chancery cases, and secondly, 'to review, affirm, modify or reverse judgments,' which included judgments in actions at law and also in chancery cases."

From the foregoing it is clear that including some part of the right of "appeal" as the word was then understood was granted as a compromise, and was an exception to the fundamental purpose of the convention which was to simplify the judicial process by providing for one trial in a trial court and the right to one review by an appellate court.

Much has been written on the need for a retrial rather than a review of a judgment or decree in a chancery case because the judgment on the issues of fact is determined by a single judge and the right to a jury trial of the issues of fact does not exist. This fact is also true of many other cases such as divorce. If there should be two trials in cases where a jury cannot be demanded then all of such cases should have the same right as was true until the amendment to the Constitution in 1912. The amendment of 1944 put all cases, where a jury trial could

not be demanded as of right, in the same category. The announced purpose of those who drafted the amendments to the Constitution of 1912 to simplify judicial procedure and to provide for one trial and one review came closer to realization by the amendment of 1944.

The cases most frequently cited said to suggest the rule that law and fact appeals are still available under the Constitution will now be considered.

In the case of *The Youngstown Ry. Co.* v. *City of Youngstown*, 147 Ohio St., 221, 70 N. E. (2d), 649 (1946), the Supreme Court was called upon to consider the jurisdiction of the Court of Appeals after the amendment to Section 6, Article IV of the Constitution in 1944. The case was one in chancery as filed in the trial court. In an appeal to the Court of Appeals on questions of law and fact that court dismissed the appeal on law and fact on the ground that under the amendment Section 6 of Article IV of the Constitution of 1944, the Court of Appeals was without jurisdiction to retry the facts in a chancery case. Upon appeal to the Supreme Court, the court said at the very beginning of the opinion:

"The sole question now before the court for consideration is whether the court of appeals was in error in dismissing the plaintiff's appeal on questions of law and fact on the ground that it is without appellate jurisdiction in the trial of chancery cases."

In considering this question, the court held:

"1. Section 6 of Article IV of the Constitution of Ohio, as amended November 7, 1944, empowers but does not require the General Assembly to change the appellate jurisdiction of the Courts of Appeals.

"2. Unless and until there is such legislative action, the appellate jurisdiction of the Courts of Appeals remains as it was at the time the amendment was adopted."

In coming to this conclusion, the court pointed out that the amended provisions of the appellate courts' jurisdictional sections of the Constitution, in part, provided:

"All laws now in force, not inconsistent herewith, shall continue in force until amended or repealed."

On the basis of this provision, which is the sole authority for this decision (this provision has been deleted by amendment

effective November 6, 1959) as shown by the syllabus, the right of the Court of Appeals to retry the facts in a chancery case was said to continue on the authority of "existing law," that is, the constitutional provisions before amendment and statutory provisions not inconsistent therewith, in force prior to the amendment. At that time, what is now Chapter 2505, Revised Code, provided the procedure for both the retrial of the facts in chancery cases and appeals on questions of law. It must be noted that the opinion does not hold that jurisdiction to retry the facts in chancery cases was provided for under the phrase of the amendment "and such jurisdiction as may be provided for by law to review, affirm, modify or reverse judgments. * * *." Certainly, if constitutional authority providing for law and fact appeals could be found in the quoted amended provisions (which, as indicated above, was not the fact), there were existing procedural statutes to support such appeals and the decision did not need to look to the repealed provisions of Section 6, Article IV and the procedural statutes as to appeals and error proceedings in force prior to the amendment to support the conclusion reached. The case, therefore, is not authority for the claim that under the amended provisions of 1944 (Section 6, Article IV) the legislature is now authorized to provide or authorize appeals on questions of law and fact. Since this decision, the legislature has "acted" by amending Sections 2501.02 and 2505.21, Revised Code, setting out in detail the actions included in the term "chancery cases" and the method of trial in law and fact appeals, supplementing existing statutes on that subject, and since the constitutional authority relied on has been repealed, the authority of the *Youngstown Ry. case, supra,* cannot now be relied upon as determining the right of the Court of Appeals to retry the facts in chancery cases. It is the conclusion of the writer of this dissenting opinion that all of the sections of the code, including those just cited, providing for or implementing the rights to retry the facts in chancery cases in the Court of Appeals, are unconstitutional for the reasons hereinbefore stated.

The case of *Bradford* v. *Micklethwaite,* 163 Ohio St., 301, 127 N. E. (2d), 21, is cited as supporting the conclusion that under Section 6, Article IV of the Constitution, as amended in 1944, the Court of Appeals has retained jurisdiction to retry

the facts in chancery cases. However, the court, on page 302 of the opinion, stated:

"The sole question with which this court is now concerned is whether the Court of Appeals should hear and determine this controversy as an appeal on questions of law and fact as contended by the appellants or whether that court was correct in determining that the cause should be heard and disposed of as an appeal on questions of law only, without a retrial of the facts."

The basis of the court's decision was that the case was not a chancery case and, therefore, the court of appeals was correct in dismissing the appeal on questions of law and fact. The question of the right of the court of appeals to retry the facts was not suggested to the court nor did the court give consideration to that question in the three majority opinions. The principal opinion was concerned with the question of whether or not the action in the trial court was in chancery. The judgment of the Supreme Court affirmed the Court of Appeals holding the action to be one at law and not appealable on law and fact. The concurring opinions were concerned with the question of whether or not the order of the Court of Appeals, dismissing the appeal on questions of law and fact and retaining such appeal on questions of law, was a final appealable order. The conclusion reached that it was an appealable order and the cases relied on in reaching that conclusion have since been challenged by the case of *Humphrys* v. *Putnam*, 172 Ohio St., 456, 178 N. E. (2d), 506, holding an entry dismissing an appeal on law and fact and retaining it on law was not an appealable order. But in the dissenting opinion, Judge, now Chief Justice Taft, in considering the jurisdiction of the court of appeals under the amended provisions of Section 6, Article IV of the Constitution, effective January 1, 1945, concluded that such an order was not a final order, and said on page 323:

"That section as amended in 1944, also provided:

"All laws now in force, not inconsistent herewith, shall continue in force until amended or repealed.
"* * *

"*Youngstown Municipal Ry. Co.* v. *City of Youngstown*, 147 Ohio St., 221, 70 N. E. (2d), 649, merely represents a holding that this last quoted portion of Section 6 of Article IV of the

Constitution meant what it said. The appellate procedure statutes in force at the time of its adoption certainly provided for an appeal that would include a retrial of the facts by the court of appeals.

"Thereafter, however, there was obviously *no constitutional right to a retrial of the facts by the court of appeals* and this court recognized that in 1952 when by amendment of Rule 24 it made allowance for a motion to certify the record a prerequisite to review pursuant to that rule." (Emphasis added.)

The case of *Green* v. *Acacia Mutual Life Ins. Co.*, 156 Ohio St., 1, 100 N. E. (2d), 211, reconsidered the question of whether or not the granting of a motion for a new trial constituted a final appealable order. The court said in the first paragraph of the syllabus:

"1. The amendment of Section 6, Article IV of the Constitution of Ohio, adopted November 7, 1944, and effective January 1, 1945, is the sole source of jurisdiction of the Court of Appeals and such jurisdiction can not be enlarged by the General Assembly. The latter may legislate as to the jurisdiction of the Court of Appeals to review, affirm, modify, set aside or reverse final orders or judgments of boards, commissions, officers, tribunals or courts of record inferior to the Court of Appeals, but it has no authority to confer on the Court of Appeals jurisdiction to review any orders which do not constitute final orders or judgments."

And on page 11 of the opinion, the court said:

"When the people amended Section 6, Article IV of the Constitution, by their vote on November 7, 1944, they could have given the General Assembly unlimited power to confer appellate jurisdiction on the Courts of Appeals, or they could have given the Courts of Appeals the authority to review orders granting motions for new trial. But they did not do so. They did enlarge the jurisdiction of Courts of Appeals by giving them appellate jurisdiction, as may be provided by law, to review judgments or final orders of boards, commissions, officers and tribunals, in addition to courts, but they still kept in the Constitution the provision that the review shall be confined to judgments or final orders."

It should be noted that one of the dissenting opinions based

the right of the legislature to define the meaning of "what constitutes a final order" on the fact that by the constitutional amendment to the jurisdiction of the court of appeals of 1944, in the use of the phrase at the beginning of the appellate jurisdictional grant: "Such jurisdiction as may be provided by law to review, affirm * * *" returned the power to fix the appellate jurisdiction of the court to the legislature. This view was not concurred in by any other member of the court as is demonstrated by the majority opinion and the other dissenting opinion filed in the case so that the holding in the *Cincinnati Polyclinic case, supra,* that the phrase "as may be provided by law" did not place the jurisdiction of the court of appeals within the control of the legislature, stands unchallenged. The court in the trial of the foregoing cases was not called upon to consider, nor did it consider, the question of whether or not under the 1944 amendment, the court of appeals was vested with jurisdiction to retry the facts in chancery cases.

It must be stressed that the change of the manner of conducting a retrial of a chancery case provided by Section 2505.21, Revised Code, as amended effective October 4, 1955 (if that part of the section is constitutional) did not create a new proceeding on review. The purpose to be accomplished by such amendment was to relieve witnesses from the arduous task of being called for successive appearances in the trial of the same case and to require the parties to present all the evidence available to them, which they desired to present in the first trial so that such trial is, in fact, a full trial of the issues and not a discovery proceeding, presenting only so much of the evidence as will successfully prevent being directed out of court or from an entry of judgment as a matter of law. Such a proceeding, when conducted as provided by Section 2505.21, Revised Code, is a trial of the issues of fact, and not a review of the record on claims of error.

For the reasons, therefore, that by the amendment of 1944 to Section 6 of Artivle IV of the Constitution of Ohio, the words "in the trial of chancery cases" were deleted from the jurisdictional grant to the court of appeals (which was the basis or authority upon which trials de novo were had in chancery cases); that the Supreme Court determined in the case of *Green* v. *Acacia Mutual Life Ins. Co. (1951), supra,* as it had

in a number of cases decided prior to 1945, that Section 6 of Article IV was the sole source of the jurisdiction of the court of appeals and that such jurisdiction could not be enlarged by the General Assembly so that the power of the assembly is limited in providing for or dealing with jurisdictional and procedural rights and rules as circumscribed by the phrase "such jurisdiction as provided by law to review, affirm, modify, set aside or reverse the judgments or final orders * * * of courts of record inferior to the court of appeals * * *"; and that the word "review" as used in this section of Article IV of the Constitution, as amended in 1944, in the context in which it is found, refers to and is limited in meaning as thus used, to appeals on questions of law, it is clear that this court cannot be vested with jurisdiction to retry the facts in chancery cases. This meaning of the word "review" is clearly supported by the context in which it was used in Sections 2 and 6 of Article IV of the Constitution as amended in 1912 and the statutory definition of "review" in the Appellate Procedure Act of 1936 (Section 12223-1, General Code), in force and so understood for nine years before the amendment of 1944 was adopted by the people.

In determining the meaning of constitutional provisions, we must be concerned with the words used in the provisions thereof and in their ordinary legal sense and not what may have been said about the effect of the amendment before or after its passage by so-called sponsors.

The motions to discharge the restraining order and to dismiss the appeal on law and fact and retain it on law should be granted.

In support of this conclusion, the writer of this dissenting opinion includes, without quoting in full herein, the text of an article: "Right of the Court of Appeals to Entertain Jurisdiction in Law and Fact Appeals" published in Vol. 35, Ohio Bar, page 1150 (Oct. 8, 1962). See also Skeel's Ohio Appellate Law, 1961, Cumulative Service, 88 et seq., Sec. 200-1; "What Did The 1944 Amendment To The Constitution of Ohio Do To The Jurisdiction of The Court of Appeals" by W. K. Gardner, 31 Ohio Opinions, 561; *Buckeye Union Casualty Co.* v. *Braden*, 116 Ohio App., 348.