BRUNNER, J., dissenting.
{¶ 29} In the first decision in this appeal, State v. Gibson , 10th Dist., 2017-Ohio-7254, 96 N.E.3d 919 (" Gibson I "), a three-judge panel of this Court reversed the trial court's denial of Gibson's jail-time credit correction motion, remanding the matter to the trial court. We held in that 2-1 decision: "Because Gibson's motion did state facts amounting to an assertion that he had not previously raised in his claim regarding jail-time credit, the trial court erred in deciding that Gibson's motion was not filed pursuant to R.C. 2929.19(B)(2)(g)(iii)." Id. at ¶¶ 1, 15. The dissent in Gibson I argued cases in addition to State v. Smith , 10th Dist. No. 15AP-209, 2015-Ohio-4465, 2015 WL 6459961, as well as cases that relied on and interpreted Smith, as support for the proposition that a transcript must be provided with a motion under R.C. 2929.19(B)(2)(g)(iii) to supply the continuing jurisdiction of the trial court to correct jail-time credit errors not addressed at sentencing. Gibson I at ¶¶ 24-25.[6]
{¶ 30} The Eleventh District Court of Appeals has specifically interpreted Smith as requiring a transcript to be filed with the motion. State v. Guiterres, 11th Dist. No. 2015-T-0116, 2016-Ohio-5572, 2016 WL 4586262, ¶¶ 15-16 ("Moreover, in moving for additional credit, the defendant has the burden of demonstrating that their argument was not previously considered at sentencing. [Smith ] at ¶ 10. The record before this court does not have a transcript of the sentencing hearing. As a result, appellant cannot show whether the issue of his incarceration in the county jail was raised and considered at that time, thereby precluding its consideration in a postconviction motion. On this basis alone, the substance of appellant's argument cannot be addressed, and his sole assignment of error is without merit. "). (Emphasis added.) See also Gibson I at ¶¶ 24-25.
{¶ 31} Following the *878 State's motion for en banc review, and based on the dissent's arguments that Smith and the two other out-of-district appellate cases require a transcript, we determined that our holding in Gibson I was in conflict with our previous holding in Smith . We thus granted the State's motion for en banc review,[7] finding Gibson I to be in conflict with our previous holding in Smith .
{¶ 32} In resolving this conflict on the merits, the majority retains the stance in Smith that incarcerated applicants who seek to invoke the trial court's continuing jurisdiction to correct jail-time credit under R.C. 2929.19(B)(2)(g)(iii) must supply specific, evidentiary material to support their motion. The majority has further stated,
The quality and quantity of proof required to establish the trial court's continuing jurisdiction over jail-time credit depends on the particular facts and circumstances in each case, and it is the trial court that must determine, in the first instance, whether the moving party has produced evidence sufficient to support a finding that the alleged error in jail-time credit was not raised at sentencing. Consistent with Smith , we hold that a movant's unsworn allegation that the alleged error in jail-time credit was not raised at sentencing is insufficient to establish the trial court's continuing jurisdiction under R.C. 2929.19(B)(2)(g)(iii).
(Emphasis added.) (Majority Decision ("Gibson II ") at ¶ 24.)
{¶ 29} Accordingly, I respectfully dissent for two distinct reasons: one, that by judicially supplying additional obstacles (be it a transcript or an affidavit) to the statutory provisions for correction of jail-time credit, we unconstitutionally curtail the rights of citizens, whether they be incarcerated now or in the future; and two, because our decision impermissibly modifies the terms of the grant of jurisdiction given to the common pleas courts by the legislature in R.C. 2929.19(B)(2)(g)(iii) to correct certain errors in jail-time credit after sentencing.
{¶ 30} When we in effect modify the terms of R.C. 2929.19(B)(2)(g)(iii) with additional requirements such as a transcript or an affidavit that must be provided to gain the court's attention, and further hold as a matter of law that the trial court has jurisdiction to "determine the quality and quantity of proof required" to establish its own continuing jurisdiction, we impermissibly cross the line separating the powers of the State's three branches of government, stepping into the province of the legislature. (Majority Decision at ¶ 24.) This we cannot do. Ohio Constitution, Article IV, Section (B). ("The courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters and such powers of review of proceedings of administrative officers and agencies as may be provided by law .") (Emphasis added.) For the purpose of explaining my reasons, I outline my concerns according to a delineated, progressive analysis.
How Smith and Gibson I differ
{¶ 31} Smith and Gibson I are consistent with one another to the extent that both stand for the proposition that R.C. 2929.19(B)(2)(g)(iii) only permits a defendant to avoid application of a properly asserted defense of res judicata when the issue of jail-time credit error was "not previously raised at sentencing." Smith at ¶ 8 -10; Gibson I at ¶¶ 9-10. But in Smith , decided before Gibson I, this Court held that, under R.C. 2929.19(B)(2)(g)(iii), an incarcerated individual seeking to correct jail-time credit bears an additional, unlegislated *879 burden of producing a certain quality of evidence, described in Smith only as, "[g]iven the lack of evidence to support his motion, we conclude that appellant has not demonstrated that the trial court abused its discretion by denying his motion for jail-time credit," with the motion to establish that the alleged error was not previously raised at sentencing, and that this must be done to avoid the application of res judicata. Smith at ¶¶ 10, 14. But in Smith , evidence such as a transcript was not for the purpose of invoking the continuing jurisdiction of the trial court. Rather, it was to avoid the application of the affirmative defense of res judicata. Id. at ¶ 8, in passim (using the word "jurisdiction" only once in a block quote of the statute and otherwise exclusively discussing res judicata).
{¶ 31} Production of a transcript and other evidentiary materials is, for most incarcerated individuals, beyond their financial reach and in effect becomes in itself a collateral sanction.[8] In Gibson I , we avoided this.
{¶ 32} In Gibson I , we also avoided a more global problem: When we in Smith required an incarcerated criminal defendant to request, pay for, and submit evidence such as a transcript or other documentary evidence,[9] ,[10] from his or her original or other sentencing proceedings to survive what is tantamount to a presumption that res judicata applies, we ignored the proverbial piranha in the fish tank of the State's constitutionally mandated separation of powers. We in effect stepped into the shoes of the legislature by adding requirements for access to the courts to a statute that determines a trial court's continuing jurisdiction.
{¶ 33} Finally, in Gibson I, Gibson posited in his sole assignment of error the constitutional questions raised by the Fifth and Fourteenth Amendments of the U.S. Constitution. He asked us to balance all of these issues within the constitutional framework of equal protection and due process. Such an analysis was neither sought nor expressed in Smith.
How the majority decision in the en banc Gibson II differs from Smith and Gibson I
{¶ 34} In Gibson I, we saw no requirement in the language of R.C. 2929.19(B)(2)(g)(iii) for the incarcerated individual to supply anything but a motion with an allegation that jail-time credit error existed that had not previously been raised at sentencing. In Gibson II, it appears that the majority steps away from the more extreme requirement implicated in Smith, argued by the State and endorsed by the dissent in Gibson I, of requiring the incarcerated movant to file a *880 transcript; rather, the Gibson II majority now requires an affidavit. But an affidavit is not required by the statute, either. Thus, more in keeping with Smith , the majority would require an affidavit to be submitted to accompany or be part of an R.C. 2929.19(B)(2)(g)(iii) motion rather than to give effect to the plain language of the statute.
{¶ 35} In Gibson I , we reached our decision in recognition of the fact that R.C. 2929.19(B)(2)(g)(iii) expands or continues the jurisdiction of the trial court to make jail-time credit correction under particular circumstances set forth in the statute. Now, under Gibson II, instead of overruling those parts of Smith that the State and the dissent in Gibson I argue impose a transcript requirement to avoid res judicata, the majority holds that an affidavit must be submitted, which may not be enough if the trial court does not think so (Majority Decision at ¶ 24), instead of a transcript under R.C. 2929.19(B)(2)(g)(iii) -and this is necessary just to gain the trial court's attention to correcting potential error in how much time a person may legally and constitutionally be locked up.
Constitutional underpinnings to R.C. 2929.19(B)(2)(g)(iii)
{¶ 36} The Constitution requires that " 'all time spent in any jail prior to trial and commitment by [a prisoner who is] unable to make bail because of indigency must be credited to his sentence.' " (Emphasis sic.) State v. Fugate , 117 Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440, ¶ 7 ; see also Tate v. Short , 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971) ; Williams v. Illinois , 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970) ; Griffin v. Illinois , 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Before this constitutional right can be procedurally forfeited, due process must be observed.
{¶ 37} As the Second District Court of Appeals recently observed:
We have held that due process requires that a defendant be given notice of, and an opportunity to be heard regarding, the findings the court intends to make on jail-time credit. If an opportunity to be heard did not occur during the sentencing hearing, often because the necessary facts concerning a defendant's confinement are not then known to the court, "the court must make a delayed determination, and due process then requires that the defendant have notice of and an opportunity to be heard concerning the finding the court proposes to make." State v. Flemings , 2d Dist. Montgomery No. 24615, 2011-Ohio-4286 [2011 WL 3807064], ¶ 33-34, citing State v. Coyle , 2d Dist. Montgomery No. 23450, 2010-Ohio-2130 [2010 WL 1931987].
State v. Wade , 2d Dist. No. 2015-CA-45, 2015-Ohio-5171, 2015 WL 8553238, ¶ 13. In recognition of the gravity of jail-time credit determinations, the Supreme Court of Ohio has recognized that a judgment of conviction and sentence required by Crim.R. 32(C) entails a factual determination of the number of days of confinement by which the department of rehabilitation and correction must reduce the sentence the court imposes. State ex rel. Rankin v. Ohio Adult Parole Auth. , 98 Ohio St.3d 476, 2003-Ohio-2061, 786 N.E.2d 1286, ¶ 7.
Understanding a sentencing court's continuing jurisdiction versus the barring of claims because of res judicata
{¶ 38} In tension with the constitutional right to jail-time credit and the due process right to be heard on the factual determination of jail-time credit, there are two frames of reference in correcting or modifying jail-time credit after the time for direct appeal: First, the trial court relinquishes *881 jurisdiction following final judgment except to correct void judgments and clerical errors. State v. Raber , 134 Ohio St.3d 350, 2012-Ohio-5636, 982 N.E.2d 684, ¶ 20. Second, res judicata provides the State with an equitable defense to preclude arguments that jail-time credit awarded was incorrect if the arguments were raised or could have been raised at trial or on direct appeal. State v. Breeze , 10th Dist. No. 15AP-1027, 2016-Ohio-1457, 2016 WL 1378208, ¶¶ 7-9. Though analyses of these concepts are often taken together in cases involving jail-time credit, a court's jurisdiction and res judicata remain separate legal concepts. "Jurisdiction" refers to a court's power to hear a case (subject-matter jurisdiction) and to assert authority over the parties (personal jurisdiction). In re L.H. , 10th Dist. No. 06AP-23, 2006-Ohio-4116, 2006 WL 2300682, ¶ 7. " 'Res judicata,' " by contrast, is a combination of issue preclusion and claim preclusion that one party may assert to estop the other from relitigating matters already decided. Breeze at ¶ 7, quoting Brooks v. Kelly , 144 Ohio St.3d 322, 2015-Ohio-2805, 43 N.E.3d 385, ¶ 7.
{¶ 39} As for the question of jurisdiction, the Supreme Court has time and again "recognized that 'trial courts lack authority to reconsider their own valid final judgments in criminal cases.' " Raber at ¶ 20, quoting State ex rel. White v. Junkin , 80 Ohio St.3d 335, 338, 686 N.E.2d 267 (1997), citing State ex rel. Hansen v. Reed , 63 Ohio St.3d 597, 589 N.E.2d 1324 (1992). But it has long been established that trial courts nonetheless "retain continuing jurisdiction to correct a void sentence and to correct a clerical error in a judgment." Raber at ¶ 20, citing State ex rel. Cruzado v. Zaleski , 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶ 19. Among the clerical errors that trial courts have always retained jurisdiction to correct are "mathematical errors" in computing jail-time credit.
{¶ 40} In addition to framing the question in terms of continuing jurisdiction, we also have previously held that jail-time credit correction should not be foreclosed by res judicata. State v. Canty , 10th Dist. No. 15AP-715, 2015-Ohio-5241, 2015 WL 8775022, ¶ 9 ; State v. Lee , 10th Dist. No. 11AP-721, 2012-Ohio-1761, 2012 WL 1383110, ¶ 6 ; State ex rel. Corder v. Wilson , 68 Ohio App.3d 567, 573, 589 N.E.2d 113 (10th Dist.1991). Res judicata generally bars a criminal defendant from litigating claims after direct appeal if the issue was raised or could have been raised before the trial court or on a direct appeal[11] from the trial court's judgment. State v. Jackson , 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, ¶ 92. However, res judicata does not automatically apply without being raised as an affirmative defense, and it is subject to forfeiture, just as are constitutional arguments. Thus, the party asserting res judicata usually bears the burden of showing entitlement to the defense, and the defense does not apply in situations where it would be unjust to apply it, as explained further.
{¶ 41} Res judicata is not contemplated directly in the Ohio Rules of Criminal Procedure, but Crim.R. 57(B) requires that we "look to the rules of civil procedure and to the applicable law" in their absence.[12] Civ.R. 8(C) classifies "res judicata" as an "affirmative defense." Interpretive caselaw *882 is consistent with this designation, even in the context of criminal cases. State v. Lelux , 10th Dist. No. 97APA10-1308, 1998 WL 303884, *2 (June 11, 1998) ; see also, e.g., State v. Williams , 8th Dist. No. 103144, 2016-Ohio-2629, 2016 WL 1593159, ¶ 9.
{¶ 42} The Supreme Court has held that, "because res judicata is an affirmative defense * * * resolution of a res judicata defense typically requires resort to materials outside the pleadings." (Citations omitted.) State ex rel. West v. McDonnell , 139 Ohio St.3d 115, 2014-Ohio-1562, 9 N.E.3d 1025, ¶ 16 ; see also Midfed Sav. Bank v. Martin , 12th Dist. No. CA91-12-202, 1992 WL 165143, *2 (July 13, 1992), quoting Freeman v. Beech Aircraft Corp. , 12th Dist. No. CA80-11-119, 1983 WL 4495, *4 (Sept. 30, 1983) (stating " 'the party relying on res judicata or collateral estoppel has the burden of showing that precisely the same issue was adjudicated in the prior case as arises in the subsequent case' ").
{¶ 43} The initial burden was on the State to demonstrate that res judicata applied by showing that Gibson "raised or could have raised the issue" of jail-time credit at sentencing. (Emphasis omitted.) Jackson at ¶ 92. Requiring a transcript of an incarcerated defendant who seeks correction of jail-time credit, underpinned by Smith , Johnson , and Guiterres at ¶¶ 15-16, in order to overcome a res judicata defense of the State is an affront to due process.[13]
{¶ 44} Finally, the Supreme Court has held that res judicata (unlike want of jurisdiction) is only to be " 'applied in particular situations as fairness and justice require, and that it is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice .' " (Emphasis sic.) Davis v. Wal-Mart Stores, Inc. , 93 Ohio St.3d 488, 491, 756 N.E.2d 657 (2001), quoting Grava v. Parkman Twp. , 73 Ohio St.3d 379, 386, 653 N.E.2d 226 (1995) (Douglas, J. dissenting); 46 American Jurisprudence 2d, Judgments, Section 522, at 786-87 (1994) ; see also, e.g. , State v. Griffin , 138 Ohio St.3d 108, 2013-Ohio-5481, 4 N.E.3d 989, ¶ 47.
{¶ 45} Because the Ohio Constitution, Article IV, Section (B), establishes common pleas courts' jurisdiction to be "as may be provided by law," only the legislature can expand or contract the provisions of its own statute. The phrase "as provided by law" in the Constitution of Ohio "must be given its plain, ordinary and usual meaning and that meaning must be uniform in all the parts of the constitution and * * * it means an act of the general assembly of this state * * *." Fitzgerald v. Cleveland , 88 Ohio St. 338, 400, 103 N.E. 512 (1913) (Donahue, J., dissenting). See also Weiss v. Kearns , 117 Ohio App. 393, 413, 191 N.E.2d 552 (8th Dist.1963) (Skeel, C.J., dissenting) ("But even if it should be concluded that by simply changing the place of the words, 'as provided by law,' in the jurisdictional grant of the Constitution, defining the jurisdiction of the Courts of Appeals, from the end of the clause to a place near the beginning, it was the purpose of the constitutional amendment to return to the Legislature (as was true prior to 1912) the right to fix and control the jurisdiction of the Courts of Appeals, then such right would be circumscribed by the phrase to review, affirm, modify, set aside, or reverse judgments or final orders, *883 thus limiting the power of the Legislature to provide for appeals on questions of law.") (citations omitted); and Libertarian Party of Ohio v. Husted , 10th Dist., 2017-Ohio-7737, 97 N.E.3d 1083, ¶ 34 ("Indeed, by stating that petitions are to be made 'as provided by law,' the provision [ Ohio Constitution, Article V, Section 7 ] explicitly reserves the proper construction of such petitions to subsequent enactments by the General Assembly.").
{¶ 46} We may only interpret but not add words to the statute, which is by state constitutional definition what is "provided by law." Id. Rather than to insert ourselves into the policymaking role of the legislature, we should recognize, like it or not, that in R.C. 2929.19(B)(2)(g)(iii), the legislature codified and expanded the jurisdiction of the common pleas courts to reconsider their decisions in criminal cases in stated circumstances. In doing so, the legislature carefully extended the continuing jurisdiction of a sentencing court and thereby afforded an exception to the common law defense of res judicata:
The sentencing court retains continuing jurisdiction to correct any error not previously raised at sentencing in making a determination [regarding jail-time credit]. The offender may, at any time after sentencing, file a motion in the sentencing court to correct any error made in making a determination [regarding jail-time credit], and the court may in its discretion grant or deny that motion. * * * Sections [governing petitions for postconviction relief and motions for new trials] do not apply to a motion made under this section.
R.C. 2929.19(B)(2)(g)(iii). The Supreme Court has recognized this as an expansion of trial court jurisdiction and noted that, prior to this enactment, motions to correct jail-time credit were frequently "barred by the doctrine of res judicata," but after the enactment "an offender can file a motion to correct an error in determining jail-time credit 'at any time after sentencing' and the sentencing court has authority to correct any error in determining jail-time credit that was 'not previously raised at sentencing.' " (Emphasis added.) See State v. Thompson , 147 Ohio St.3d 29, 2016-Ohio-2769, 59 N.E.3d 1264, ¶¶ 11-12, quoting R.C. 2929.19(B)(2)(g)(iii).
{¶ 47} In laying the foundation for judicially imposing certain evidentiary requirements in Smith and specifically extending them in Gibson II even to trial courts, we make easier for trial courts to conflate continuing jurisdiction (set by statute) with res judicata (a defense proffered by the State). State ex rel. West at ¶ 16. We dishonor the constitutional rights of incarcerated defendants, and we tread unconstitutionally in areas not meant for us. We do not set the jurisdiction of trial courts; the legislature does. Ohio Constitution, Article IV, Section (B).
Gibson II: Requiring an affidavit instead of a transcript, as Smith requires
{¶ 48} According to the statute, the operative action Gibson was required to take was to "file a motion" that asserted that the issue of jail-time credit he raised had not been raised at sentencing. As noted, there is no requirement for the filing of a transcript or an affidavit to support his allegation. R.C. 2929.19(B)(2)(g)(iii) ; Smith at ¶ 14 ; Guiterres at ¶¶ 15-16. Nor does Crim.R. 47 require a transcript to be filed. Instead, Crim.R. 47 merely requires that Gibson's motion be stated with particularity and that such motion may be supported by affidavit.
{¶ 49} By its plain language, R.C. 2929.19(B)(2)(g)(iii) vests a trial court with continuing jurisdiction to review "any" jail-time credit error not previously raised at sentencing, regardless of whether the alleged error is legal or mathematical in *884 nature. We saw no basis in Gibson I for requiring the defendant to submit a transcript to invoke the trial court's jurisdiction and I see none now.
{¶ 50} Whether either a movant or the State uses a transcript to satisfy their burden of proof or whether they use other material such as an affidavit depends on the record and on each party's strategy in successfully meeting their burdens of proof. To cause the moving party to bear both the burden of proving allegations in a motion as well as disproving an affirmative defense such as res judicata is tantamount to requiring the State in the initial criminal case to prove the lack of an affirmative defense in proving the commission of a crime, whether or not the defense is raised. This can hardly be what the Ohio General Assembly meant when it drafted R.C. 2929.19(B)(2)(g)(iii).
Failure to honor state constitutionally established separation of powers
{¶ 51} Having established that Smith specifies that it is "the movant[ ]'s burden to demonstrate" an entitlement to the statutory exception with the production of what has heretofore been argued to require a transcript at the time of the filing of a motion under R.C. 2929.19(B)(2)(g)(iii), the en banc majority's requirement of an affidavit is substantively little different from requiring an incarcerated defendant to provide a transcript with his or her motion to correct jail-time credit. Smith at ¶¶ 7-10. This is because the incarcerated movant is still required to undertake activity that the statute does not mandate.
{¶ 52} In Gibson II, we, as a court, have judicially determined what supplies the continuing jurisdiction of the state's trial courts by imposing new requirements to the very statute that declares it- R.C. 2929.19(B)(2)(g)(iii). Under Ohio Constitution, Article IV, Section (B), only the legislature can do this.
{¶ 53} In Smith , we assiduously avoided this question and instead embraced the concept of what such an incarcerated defendant must do to avoid res judicata. We should have examined the fact that our decision to impose evidentiary requirements at the outset of the filing of a motion impermissibly operated to limit the legislature's power to determine courts' jurisdiction. Whether it is in Smith or in the decision of the en banc majority in Gibson II , we cannot undertake this role. Fitzgerald ; Weiss ; Libertarian Party of Ohio.
{¶ 54} The people of this State have spoken through their Constitution, and they have not authorized us in their delegation of self-governance to determine our own or any other court's jurisdiction. Nor have they authorized that we release the common pleas court from the jurisdiction "as provided by law" to determine its own jurisdiction. Ohio Constitution, Article IV, Section (B); Majority Decision at ¶ 24.
{¶ 55} I dissent based on the unshakeable conviction that we must heed our state constitutional limits of this power. Judges of the courts of appeal act as arbiters between those people who have submitted the resolution of their problems to the trial and administrative courts of this State and those officers of the court who directly impose the rule of law in resolving them. We must identify and cause to be corrected both the neglect and abuse of that process so that the very law in which the people trust is not used unfairly against them. Thus, it is not for us to add language to the statute that does not exist-especially when that language defines the jurisdiction of the common pleas courts of this State whose decisions we must carefully review. We must heed the call of judicial restraint rather than impose procedures that may well result in restraint of our people beyond what is legally and constitutionally permissible.
*885 {¶ 56} Accordingly, I would hold that the trial court erred in finding that Gibson had failed to allege that the claimed error in his jail-time credit was not raised at sentencing. I would further hold that the trial court erred as a matter of law in rejecting on res judicata grounds the merits of Gibson's motion for additional jail-time credit on the filing of the motion, and I would sustain Gibson's assignment of error. For the reasons stated in this opinion, I respectfully dissent from the decision of the majority en banc.
TYACK and HORTON, JJ., join in the foregoing dissent.

The specific language from the dissent in Gibson I is:
Because appellant did not file a transcript of the sentencing hearing or any other evidence establishing that the jail-time credit issue was not raised at sentencing, the trial court was without jurisdiction to consider the motion. Johnson ; Guiterres .
For the foregoing reasons, I would hold that the trial court did not err when it denied appellant's motion for jail-time credit.
Gibson I at ¶¶ 24-25

The majority now emphasizes that Smith did not per se require a transcript, even though Smith has been used time and again in arguing to require it. If this is the case, there is a real question about why en banc review was granted in the first instance, since a conflict appears more and more elusive.

From a practical standpoint, if we determine the burden belongs to the incarcerated defendant, our next question faced will be whether such an individual (who is most likely indigent on account of incarceration) is entitled to a free transcript or other documentary evidence from the clerk or sheriff.

It should be noted that a transcript may not always be the form of evidence submitted by a defendant seeking to correct jail-time credit. In State v. Canty , 10th Dist. No. 15AP-715, 2015-Ohio-5241, 2015 WL 8775022, the incarcerated individual "provided documentation to the trial court indicating he was arrested and detained on February 14, 2013 in Madison County, Illinois as a 'Fugitive from Justice.' " Id. at ¶ 10. We characterized the jail-time credit error as being "asserted by Canty" as "not raised at sentencing," and we held that "res judicata does not bar Canty's request for additional jail-time credit pursuant to R.C. 2929.19(B)(2)(g)(iii)." Canty at ¶ 11.

We also noted in Gibson I , the State could have provided a transcript but "did not do so and instead argues that Gibson should have." Gibson I at ¶ 10, fn. 1.

"Jail-time credit determinations can be challenged in a direct appeal." Canty at ¶ 7.

"If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules of criminal procedure, and shall look to the rules of civil procedure and to the applicable law if no rule of criminal procedure exists." Crim.R. 57(B).

Under Gibson I, at a hearing, Gibson would have had the burden to prove his allegations of error in the computation of his jail-time credit, and the State would have had the burden to prove its affirmative defense, i.e., to show that res judicata applied, because the matter of jail-time credit error asserted by Gibson had been or could have been previously raised at the trial level or on appeal.